(8 App. Div. 186)

EMBLER v. HARTFORD STEAM BOILER INSPECTION & INS. CO. et al.

(Supreme Court, Appellate Division, Third Department. July 7, 1896.)

INSURANCE—NATURE OF CONTRACT—INDEMNITY.

A policy insuring against loss or damage to property, whether owned by the insured or others, for which the insured may be liable, resulting from explosion of a steam boiler, and also against loss of life or injury to persons, whether the insured's employés or any other persons, caused by such explosion, payable to the insured for the benefit of such persons or their legal representatives, is a contract of indemnity, and a person who is injured by such explosion cannot sue the insurance company.

Appeal from special term, Albany county.

Action by Albert S. Embler, as assignee of Alice Provencha, administratrix of Sylvester Provencha, deceased, who was killed by the explosion of a boiler in the factory of defendant pulp company, against the Hartford Steam Boiler Inspection & Insurance Company and the Ticonderoga Pulp & Paper Company on a policy of insurance. The complaint was dismissed on the merits, and plaintiff appeals. Affirmed.

The opinion of Mr. Justice LANDON at special term is as follows:

The contract of insurance is between the two defendants. Neither the plaintiff nor his assignor nor the decedent was a party to it. The pulp company was the employer of the decedent. The pulp company might by its negligence incur a liability to its servant or to his representatives. The Hartford Company, by its insurance policy, insured the pulp company, among other things, against "loss of human life or injury to person, whether to the assured, to employés, or any other person or persons, caused by such explosion or rupture, payable to the assured, for the benefit of the injured person or persons, or their legal representatives in case of death, and not contingent upon the legal liability of the assured." I assume that the pulp company did by its negligence incur a liability to the representatives of its servant, who was killed by the explosion of a boiler of the pulp company. It satisfied that liability by the payment to. said representative of $1,500. Whether the pulp company could recover that sum of the Hartford Company, under the policy, is not the question before us. The question here is whether the assignee of the representative of the deceased servant can recover of the Hartford Company, under the contract between it and the pulp company, the additional sum of $5,000 specified in the policy, or any part of it? I think not.

1. One cannot insure a life in which he has no interest. Ruse v. Insurance Co., 23 N. Y. 516.

2. The pulp company has satisfied the claim which the representative of its deceased servant had against it on account of its negligence in causing his death.

3. If the Hartford Company, by the policy, became the surety of tne pulp company, satisfaction of the claim by the principal releases the surety.

4. If the Hartford Company became the indemnitor of the pulp company, then the pulp company owns the cause of action.

5. If the pulp company had an insurable interest in the life of its servant, then the contract of insurance must be for its own benefit. It might receive this benefit by making the loss payable to the representative of the deceased instead of to itself, but in such case, in order to validate the policy, it must be supported by the consideration of its own obligation to its servant, which obligation the insurance company, by its policy, assumes and agrees to discharge. In other words, if the pulp company had an interest of $5,000 in the life of its servant, and owed its servant $5,000, or was under some existing pecuniary obligation to him, then the pulp company could insure its interest in its servant's life, and at the same time provide for the discharge of its pecuniary obligation to its servant by the provision in the

policy that the loss should be payable to his representative. This, I suppose, is what Lawrence v. Fox, 20 N. Y. 268, and the cases limiting it, permit Vrooman v. Turner, 69 N. Y. 280; Lorillard v. Clyde, 122 N. Y. 498, 25 N. E. 917; Durnherr v. Rau, 135 N. Y. 219, 32 N. E. 49.

But the evidence does not show that the pulp company had an insurable interest in the life of the deceased, or that it was under any existing pecuniary obligation to him, except to pay him his wages. It certainly was not in the minds of the contracting parties to provide for the payment of these wages. Plainly it was contemplated that the pulp company might, by misfortune or negligence, cause its servant's death, in which case, whether the company was legally liable or not, the representative of the deceased should recover not exceeding $5,000. This sum, whatever it might be, the insurance company promised the pulp company it would pay to the representative. The promise was to pay whatever the pulp company should be legally liable to pay on account of the death, or, if not legally liable, whatever it ought in charity or neighborly kindness to pay. Payment by the insurance company would be in place of payment by the pulp company. Payment in the first instance by the pulp company would be the satisfaction of its legal or moral obligation. If the pulp company should default in payment, the representative might have recourse to the insurance company. If the pulp company should pay, then the pulp company might have recourse to the insurance company. I do not deny that a master may, at the request of his servant, and as his trustee, insure his servant's life for the benefit of the servant's representative. This policy does not disclose such a case, nor is it shown by extrinsic evidence. The pulp company is the assured, i. e. the party for whose benefit the policy is taken. Smith v. Insurance Co., 5 Lans. 545; Hogle v. Insurance Co., 6 Rob. (N. Y.) 567. If the representative had a legal asset, I think he could have assigned it. Olmstead v. Keyes, 85 N. Y. 593. But, so construing this contract, it follows that the plaintiff cannot recover.

Argued before PARKER, P. J., and HERRICK, MERWIN, and PUTNAM, JJ.

Douglas & Heaton, for appellant.

Lewis E. Griffith, for respondent Hartford Steam Boiler Inspection & Insurance Co.

Franklin A. Rowe, for respondent Ticonderoga Pulp & Paper Co.

PARKER, P. J. By the policy of insurance upon which this action is brought it is agreed that, in consideration of $375, paid by the pulp company, the insurance company defendant insures such pulp company in the sum of $50,000 against all such immediate loss or damage as shall be caused to the property of persons specified by explosion of either of its boilers from October 12, 1891, to October 22, 1894, not exceeding in amount the sum insured. By a certificate attached to the policy, and made a part of it, termed a "special blanket," it is further provided, in substance, that the pulp company is insured in the sum of $50,000 "against loss or damage to property of every kind wherever located, whether owned by the assured or by others, and for which the assured may be liable, resulting from the explosion or rupture of said steam boiler; also against loss of human life or injury to person, whether to the assured, to employés, or to any other person or persons, caused by such explosion or rupture, payable to the assured for the benefit of the injured person or persons, or their legal representatives, in case of death, and not contingent upon the legal liability of the assured." It is further provided that, in case of temporary injury,

the liability of the insurance company shall not exceed $50 per week, and in case of loss of life their liability shall not exceed $5,000 for each life lost. It is also further provided that in case of loss the damage to property shall be first paid, and the remainder of the $50,000 only shall be applicable to loss of life or injury to person. It is provided in the policy itself that the loss by personal injury is to be based upon loss of wages of injured person from the time of total disability. It is by no means plain what the parties intended to accomplish by these provisions concerning loss of life or injury to person, so far as it applies to the employés of the assured, and I am in considerable doubt as to just what their contract upon that subject is. It is plain, however, that, whatever the agreement is, the only contracting parties are the insurance company and the pulp company. If, by their contract, so far as it extends to loss of life or injury to person, the sole purpose of such parties was to indemnify the pulp company against whatever loss should accrue to it by reason of the injury or death of its employé, and if we may so construe the language which they have used, it is plain that the plaintiffs cannot recover in this action, for the reasons so effectively stated by the trial judge. See, also, French v. Vix, 143 N. Y. 90, 94, 37 N. E. 612. It is clear that, so far as injury to property is concerned, the contract is one of indemnity to the pulp company, but it is urged by the plaintiff that, so far as it affects loss of life, the contract is not one of indemnity. An insurance against loss of property by fire or otherwise is a contract of indemnity. A life insurance is not. It is "a mere contract to pay a certain sum of money on the death of a person, in consideration of the due payment of a certain annuity for life." Olmsted v. Keyes, 85 N. Y. 593, 598. See, also, Holmes v. Gilman, 138 N. Y. 381, 34 N. E. 205. And the plaintiff claims that the contract before us is of that character. The provision that payment, in case of loss, is to be made "to the assured for the benefit of the injured person or persons, or their legal representatives in case of death," leads me to doubt whether the parties intended a mere indemnity to the pulp company. So, also, the provision that payment was to be made to the pulp company without reference to its liability for the injury, indicates that mere indemnity to it was not intended. If there was no liability from the pulp company to the person injured, it is difficult to see how any loss could accrue to such company against which indemnity could be needed, or upon which it could be estimated. So, also, if in no event the sum paid was to become the property of the pulp company,—if such company was to receive it merely to the use of the injured person,—such a payment could not be considered as an indemnity to the pulp company, and we can hardly suppose it was intended as such. But if the contract is to be considered as one by which the pulp company has insured the life of the deceased, Provencha, the question arises whether it is a valid contract. "A policy obtained by a party who has no interest in the subject of insurance is a mere wager policy." Ruse v. Insurance Co., 23 N. Y. 516, 523. In Howard v. Insurance Co., 3 Denio, 303, it is said, "When the assured has no interest at

the time the contract is made, the policy is a mere wager," etc. It may be that if the deceased, Provencha, had, at the time this contract was made, been under contract to the pulp company as its employé for a definite and unexpired term, so that the company would have then had a legal right to or an interest in his services, such company would have had such an interest in his life as would sustain a contract insuring it. But in the case before us it does not even appear that at the time of the contract Provencha was an employé of the pulp company; nor does it appear that such company ever had any definite and continuing contract for his services. For aught that appears, at the time of the contract he was an utter stranger to the company. And it is quite possible that at no time was he obligated to work for the company for a longer period than through the day. Under such circumstances, the policy, so far as it undertakes to pay for the loss of Provencha's life, is a mere wager. It is invalid, and the pulp company could not recover anything upon it. No recovery could be had upon it by any person without proving that at the time the policy was issued to the pulp company such company had an insurable interest in Provencha's life. Ruse v. Insurance Co., above cited.

Laws 1892, c. 690, § 55, has no application to the contract before us. It is argued, however, that because the policy provides that the payment to the pulp company is to be for the benefit of the person injured, such policy is not a wager, but a valid contract. I cannot see how that provision affects this question. Clearly, it was the pulp company that made the contract and procured the insurance. Even though the pulp company intended the insurance to be for the benefit of the person injured, the contract was still its contract. In no sense can it be said to have been the contract of the person injured, nor can the insurance be said to have been procured by the person injured. The pulp company did not assume to act as the agent for whoever should be injured, so that the contract can be deemed to have been made with the person injured, and for his own benefit. The provision that the payment is to be for the benefit of the injured person cannot be given any such force as that. The contract is in the name of the pulp company, and the loss is payable to it, and there is no fact in the case authorizing the conclusion that it was contracting for any person other than itself. If the contract between it and the insurance company had been a valid one, it might be that a trust would arise as between the pulp company and the person injured to hold the amount received to such person's use. But conceding, as we must, that the insurance upon which this action is brought was obtained by the pulp company upon the life of a person in whom it had no interest, I am unable to see how any action can be maintained thereon by the pulp company or any one else. I do not see how the rule laid down in Lawrence v. Fox, 20 N. Y. 268, is important in this case. A man may insure his own life, and provide that the loss be paid to a party in whom he has no interest, and the beneficiary so named may recover on the policy the amount of the loss. Olmsted v. Keyes, above cited, p. 600. But he may not insure the life of a

person in whom he has no interest, and, if he does, neither he nor the beneficiary named can recover upon it. I conclude, therefore, that whether this contract be considered one of indemnity to the pulp company, or whether it be deemed an insurance upon the life of Provencha, taken out by the pulp company, in neither view can this action be maintained.

Judgment affirmed, with costs. All concur.